# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL CASE NO. 5:08-CV-089-RLV-DCK

| | |
|---|---|
| CONLEY C. ROTEN and BRENDA C. ROTEN, as substitutes for JAMES C. ROTEN, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Judgment On The Pleadings" (Document No. 12) and "Brief In Support Of Plaintiff's Motion For Judgment On The Pleadings" (Document No. 13), filed February 9, 2009; and Defendant's "Motion For Judgment On The Pleadings" (Document No. 14) and "Memorandum In Support Of The Commissioner's Decision" (Document No. 15), filed April 9, 2009. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B), and the motions are ripe for disposition.

After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Judgment On The Pleadings" be denied; that Defendant's "Motion For Judgment On The Pleadings" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Conley C. Roten and Brenda C. Roten, as substitutes for, and on behalf of, James C. Roten (referred to collectively and/or individually as "Plaintiff"), through counsel, seek judicial review of an unfavorable administrative decision on James C. Roten's application for disability benefits.

(Document Nos. 1, 17). On October 12, 2004, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.,* alleging an inability to work due to a disabling condition beginning August 16, 2004. (Transcript of the Record of Proceedings ("Tr.") 16). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on May 9, 2005, and again after reconsideration on June 20, 2005. (Tr. 38-41). Plaintiff filed a timely written request for a hearing on or about August 1, 2005. (Tr. 37). On May 8, 2007, Plaintiff appeared and testified at a hearing before Administrative Law Judge Donald E. Garrison ("ALJ"). (Tr. 31, 411-437). On June 6, 2007, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 13-25). Plaintiff filed a request for review of the ALJ's decision on or about July 6, 2007, which was denied by the Appeals Council on July 8, 2008. (Tr. 6-10). The June 6, 2007 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. Id.

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on August 7, 2008. (Document No. 1). On or about August 20, 2010, counsel for Plaintiff requested that the parents of James C. Roten, Conley C. Roten and Brenda C. Roten, be substituted in as parties of interest based on James C. Roten's death on May 31, 2010. (Document No. 17). The undersigned allowed the motion for substitution upon receiving the case file on March 15, 2011. (Document No. 18). The pending motions are now ripe and a memorandum and recommendation to the Honorable Richard L. Voorhees is appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the

2

Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between August 16, 2004, and the date of his decision.[1] (Tr. 16). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ found that Plaintiff was not "disabled" at any time between August 16, 2004, and the date of his decision, June 6, 2007. (Tr. 25).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) quoting 42 U.S.C. § 423(d)(1)(A).

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that the Plaintiff was <u>not</u> disabled. (Tr. 25).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since August 16, 2004, his alleged disability onset date. (Tr. 18). At the second step, the ALJ found that Plaintiff's seizure disorder was a severe impairment. (Tr. 18).[2] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 18).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform medium work activity, with the following limitations:

> avoidance of any unprotected heights, moving machinery, extreme heat, driving and work with the public.

(Tr. 18). The ALJ opined that when Plaintiff "is medication compliant, the evidence indicates he is able to perform lifting, carrying, standing, walking and sitting consistent with the performance of medium work." (Tr. 24). In reaching his decision, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "also considered opinion evidence." (Tr. 18). The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

alleged symptoms, but that the [Plaintiff's] statements concerning the intensity, duration and limiting effects of his symptoms are not entirely credible." (Tr. 22).

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work as a police officer, auto sales manager, security guard, correctional officer, and/or security supervisor. (Tr. 24). At the fifth and final step, the ALJ concluded based on the testimony of a vocational expert and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 25). Specifically, the vocational expert testified that according to the factors given by the ALJ, occupations claimant could perform included: officer helper, small products packer, and table worker. (Tr. 25).

Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between August 16, 2004, and the date of his decision, June 6, 2007. (Tr. 25). On appeal to this Court, arguing that substantial evidence does not support the ALJ's decision, Plaintiff makes the following assignments of error: (1) the ALJ improperly evaluated the medical evidence; (2) the ALJ failed to properly assess Plaintiff's credibility; and (3) the ALJ improperly assessed Plaintiff's RFC. (Document No. 13). The undersigned will discuss each of Plaintiff's contentions in turn.

### A. <u>Weight of Physicians' Opinions</u>

In his first assignment of error, Plaintiff argues that the ALJ based his decision "on the work of nonexamining, nontreating physicians and the contract psychologist DDS," rather than the opinions of two treating physicians. (Document No. 13, p.5). Plaintiff alleges that "the medical evidence was improperly assessed from the start, and its improper analysis was compounded with

its effort to discredit Mr. Roten and his mother and his physician." (Document No. 13, p.7). Specifically, Plaintiff contends that the ALJ failed to properly consider the opinions of Drs. Uskavitch and Petursson. (Document No. 13, pp.5-6).

The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

Contrary to Plaintiff's contentions, the ALJ decision appears to give considerable weight to Dr. Uskavitch's opinion. For example, addressing Plaintiff's testimony that he was disabled due to migraine headaches, the ALJ cited Dr. Uskavitch's report that "Maxalt continues to be effective for the acute management of migraines." (Tr. 20). In fact, the ALJ appears to rely mostly, if not entirely, on the records of Plaintiff's treating physicians, including Dr. Uskavitch, to determine that Plaintiff's headaches are "intermittent and controlled with medication and therefore, represent a 'non-severe' impairment." (Tr. 20).

Likewise, considering Plaintiff's claim that he was disabled due to heart and stomach disorders, the ALJ concluded that "the medical evidence does not support this testimony." (Tr. 20).

7

In reaching this conclusion, the ALJ again cited multiple reports from Dr. Uskavitch. Relying on medical records "from St. Thomas where Mr. Roten actually received the bulk of his medical care around the time o[f] disability onset and prior," the ALJ also determined that the medical evidence did not support Plaintiff allegations of liver or kidney impairment. (Tr. 21); (Document No. 13, p.5).

Regarding seizures, the ALJ appears to have again relied on multiple reports from Dr. Uskavitch, and other records from St. Thomas Hospital in Nashville, Tennessee. (Tr. 21). The ALJ concluded, "[b]ased on substantial medical evidence, it is determined seizures are controlled when medication is taken as prescribed." (Tr. 21); see also, (Tr. 246-249).

The ALJ's decision also indicates that he considered the reports of Dr. Petursson. (Tr. 24). In fact, the decision explains that the Petursson opinions were entitled to less weight because the ALJ found they were not supported by "clinical findings and diagnostic techniques" consistent with other substantial evidence, and also that Dr. Petursson apparently relied heavily on subjective complaints. (Tr. 24).

Defendant's motion acknowledges that the Commissioner must "generally assign more significance to a treating physician's opinion than to non-treating or consultative physicians." (Document No. 15, p.13). Defendant then notes that "the Regulations also grant the ALJ the ability to afford less than controlling weight to a treating physician's opinion when it lacks support from clinical or laboratory evidence and is inconsistent with other substantial evidence. (Document No. 15, pp.13-14) (citing Pittman v. Massanari, 141 F.Supp.2d 601, 608 (W.D.N.C. 2001)).

Based on the foregoing, the undersigned does not find that Plaintiff has shown that the ALJ erred in his evaluation of the medical evidence, particularly the weight given to the treating physicians' opinions.

**B. Credibility**

Next, Plaintiff challenges the ALJ's assessment of Plaintiff's credibility. (Document No. 13, pp.8-10). Plaintiff contends that the ALJ's conclusions regarding credibility were "not properly made," and therefore, the case should be at least remanded. The undersigned respectfully disagrees.

The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, (citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1)). The regulations provide that:

> this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, see id.; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.) ... and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it

Craig, 76 F.3d at 595 (citations omitted).

In this case, the ALJ's observations regarding the credibility determination included the following:

> Non-compliance with medical recommendations and inconsistencies of record detract from credibility. Also, the claimant's activities of daily living are inconsistent with his allegations of disability, i.e., he prepared meals, performed household chores, attended church, visited with neighbors, helped his son with homework, etc. The evidence clearly reveals an ongoing pattern of noncompliance with medication. The documented "dramatic behavior" by the claimant, the "secondary gain" issues and a need to rule out "malingering" all diminish credibility. The claimant inferred he could not afford medications/treatment. However, the record reveals he spent money on cigarettes and there is no evidence he took advantage of free clinic assistance or low cost treatment services. . . . He alleges he has been unable to perform any type of gain employment since August 2004. However, substantial evidence indicates he has no limitations which would preclude the performance of heavy work activity. Also, his performance of walking, attending church and performing heavy household chores belie his allegations of disability. Inconsistencies give validity to the belief that symptoms and limitations have been exaggerated. When the objective evidence and daily activities are measured against testimony, allegations of total disability become less credible. When measured against a less than exemplary work history, his testimony regarding an inability to perform any type of work activity becomes even less credible. Evidence of symptom exaggeration, evidence of malingering with secondary gain motives, untrue statements to his treating neurologist, lack of initiative in seeking vocation rehabilitation and noncompliance with treatment recommendations, all cause credibility to be adjudge as questionable.

(Tr. 23) (citations omitted).

In addition, the undersigned notes that even though Plaintiff contends insufficient weight was given to the opinions of Dr. Uskavitch, Plaintiff made the following admission at his hearing:

> Q. So, you're telling me you lied to your neurologist about seizure activity?
> A. Quite often, sir.

10

>           . . .
>
>     Q.    Dr. Yuscevitch has been your neurologist since October 2001.
>           I mean, that's the first time you saw him approximately?
>     A.    Yes, sir.
>     Q.    Years ago.
>     A.    Yes.
>     Q.    And you lied to him all along about your seizure activity, is
>           that right?
>     A.    Yes.

(Tr. 421, 428). Defendant contends that the consistency of a claimant's statements to his treating physician is a strong indication of credibility, or the lack thereof. (Document No. 15, p.6) (citing Social Security Ruling ("SSR") 96-7p, *Evaluation of Symptoms in Disability Claims; Assessing Credibility of an Individual's Statements*, 1996 WL 374186 at *5 (July 2, 1996)).

Based on the foregoing, the undersigned is satisfied that the ALJ's decision relied on substantial evidence in determining that Plaintiff was not entirely credible.

### C. Residual Functional Capacity

Finally, Plaintiff argues that the ALJ erred in his assessment of RFC. (Document No. 13, pp.10-11). Plaintiff contends that the ALJ's assessment is not supported by the evidence. Id. Specifically, it is argued that: (1) the ALJ was improperly dismissive of Dr. Petursson's opinion that Plaintiff "could not perform any regular and consistent work;" and (2) that the RFC does not include limitations supported by the record, including Plaintiff's "problems at times getting along with others." Id.

Defendant contends that the ALJ "properly disregarded Dr. Petursson's assessment that Plaintiff could not work where her opinion was not supported by substantial evidence." (Document

No. 15, p.16)(citing Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (holding that "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted'"). In contrast to Dr. Petursson's opinion the ALJ found that the state agency physician's medical opinion, that Plaintiff had no physical limitations precluding the performance of medium work, was supported by substantial evidence. (Tr. 23).

Furthermore, the ALJ opinion, and the RFC itself, appear to take into account Plaintiff's "problems getting along with others." (Tr. 23). In particular, the ALJ concluded that Plaintiff should not engage in work dealing with the public. (Tr. 18, 23).

After careful review of the record and the parties' briefs, the undersigned is persuaded that the ALJ relied on substantial evidence in determining Plaintiff's RFC.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Judgment On The Pleadings" (Document No. 12) be **DENIED**; Defendant's "Motion For Judgment On The Pleadings" (Document No. 14) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Richard L. Voorhees.

**IT IS SO RECOMMENDED**.

Signed: March 31, 2011

David C. Keesler
United States Magistrate Judge