**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:08CV89-RLV**

| | | |
|---|---|---|
| **CONLEY C. ROTEN and BRENDA C.** | ) | |
| **ROTEN, as Substitutes for JAMES C.** | ) | |
| **ROTEN,** | ) | |
|    **Plaintiff,** | ) | |
| | ) | |
|    **v.** | ) | **Memorandum and Order** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
|    **Defendant.** | ) | |
| _____ | ) | |

  **THIS MATTER** is before the Court on the Plaintiffs' Motion for Judgment on the Pleadings (Document No. 12), filed February 9, 2009, and Defendant Commissioner's Motion for Judgment on the Pleadings (Document No. 14), filed April 9, 2009.

  Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge David C. Keesler (the "Magistrate Judge") was designated to consider and recommend disposition of the aforesaid motions. In an opinion filed March 31, 2011, the Magistrate Judge recommended that the Plaintiffs' Motion for Judgment on the Pleadings be denied, that Defendant's Motion for Judgment on the Pleadings be granted, and that the Commissioner's decision be affirmed. (Memorandum and Recommendation ("M&R"), Document No. 19 at 12.) Plaintiffs, through counsel, filed Objections to the Memorandum and Recommendation on April 13, 2011. (Document No. 20.) Plaintiffs' filing is deemed timely and any specific objections raised by Plaintiffs are considered herein.

## I. STANDARD OF REVIEW

  The Federal Magistrate Act provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection

is made." 28 U.S.C. § 636(b)(1); <u>Camby v. Davis</u>, 718 F.2d 198, 200 (4th Cir. 1983); <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43 (D.S.C. 1992). The statute does not require *de novo* review when an objecting party makes only general or conclusory objections that do not direct the court to the specific error in the magistrate judge's recommendations. *See* <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315-16 (4th Cir.2005); <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47 (4th Cir. 1982). Further, the statute does not on its face require any review at all of issues that are not the subject of an objection. <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Camby</u>, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the Court has conducted a careful review of the Magistrate Judge's Memorandum and Recommendation as well as a *de novo* review of those issues specifically raised in Plaintiffs' objections.

## II. DISCUSSION

### A. Combination of Impairments

Plaintiffs' primary challenge of the M&R concerns the findings at Steps Two and Three of the five-step sequential process with respect to the combined effect and treatment of alleged impairments. *See* 20 C.F.R. §404-1520(a)(4)(i-v)(five-step process). While Plaintiffs agree that Roten's seizure disorder was properly found to be a "severe" impairment, Plaintiffs contend that the ALJ failed to consider Roten's "non-severe" impairments and their combined effect upon Roten's ability to work in the remaining analysis.

More specifically, Plaintiffs contend that the ALJ did not apply SSR 85-28 correctly. SSR 85-28 interprets 20 C.F.R. §§ 404.1523 and 416.923, which speak to determining disability where

multiple impairments are present.[1]  Plaintiffs misunderstand the purpose of SSR 85-28.  SSR 85-28

"clarif[ies] the policy for determining when a person's impairment(s) may be found "not severe" and,

thus, the basis for a finding of "not disabled" in the sequential evaluation of disability ...."  SSR 85-

28 (1985). SSR 85-28 provides in pertinent part:

> [T]he Social Security Disability Benefits Reform Act of 1984, made it clear
> that a denial of disability benefits may be based on medical factors alone.  In
> amending ... the Act to provide for the evaluation of the impact of multiple
> impairments throughout the sequential evaluation process, Congress introduced
> language which affirms the presence of a severity threshold in the adjudicative
> process:
>
> "In determining whether an individual's physical or mental impairment or
> impairments are of a sufficient medical severity that such impairment or impairments
> could be the basis of eligibility under this section, the Secretary shall consider the
> combined effect of all of the individual's impairments ...."
>
> ***
>
> This change in regulatory definition was introduced in the language
> describing step 2 of the sequential evaluation process .... (The 1980 recodification of
> the Disability Regulations into common sense language reworded the definition of
> a not severe impairment as follows: "An impairment is not severe if it does not
> significantly limit your physical or mental abilities to do basic work activities.")
> These changes in regulatory language were not intended to alter the levels of severity

---

[1]  The text of Sections 404.1523 and 416.923 are identical.  Section 416.923 is from Chapter III, Part
416, which covers Supplemental Security Income for the Aged, Blind, and Disabled.  Section 404.1523,
also from Chapter III, but from Part 404, addresses Federal Old-Age, Survivors and Disability Insurance.
Sections 404.1523 and 416.923 provide:

> In determining whether your physical or mental impairment or impairments are
> of a sufficient medical severity that such impairment or impairments could be the basis
> of eligibility under the law, *we will consider the combined effect of all of your
> impairments without regard to whether any such impairment, if considered separately,
> would be of sufficient severity.*  If we do find a medically severe combination of
> impairments, the combined impact of the impairments will be considered throughout the
> disability determination process.  If we do not find that you have a medically severe
> combination of impairments, we will determine that you are not disabled.

20 C.F.R. §§ 404.1523 and 416.923 (2010) (*emphasis added*).

for a finding of not disabled on the basis of medical considerations alone. Rather, they were intended only to clarify the circumstances under which such a finding would be justified....

\*\*\*

Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the ***sequential evaluation process should not end with the not severe evaluation step***. Rather, it should be continued. In such a circumstance, if the impairment does not meet or equal the severity level of the relevant medical listing, ***sequential evaluation requires*** that the adjudicator evaluate the individual's ability to do past work, or to do other work based on the consideration of age, education, and prior work experience.

SSR 85-28 (1985) (*internal citations omitted and emphases added*). Thus, SSR 85-28 seeks to provide guidance in terms of (i) how the Commissioner is to evaluate the severity of an alleged impairment; and (ii) when and under what circumstances a summary denial of benefits at Step Two (based on a threshold finding that no severe impairment or combination of impairments exist) may be warranted.

Contrary to Plaintiffs' objection, ALJ Garrison did not end his evaluation of Roten's application for disability benefits after considering the severity of the alleged impairments at Step Two. In fact, the ALJ found that Roten suffered from a single severe impairment, seizure disorder. Roten's other alleged impairments, including migraine headaches, heart and stomach disorders / gastritis, liver and kidney failure, encephalomalacia, etc., were found to be non-severe and limiting to Roten on an intermittent basis, if at all.[2]

---

[2] With respect to migraine headaches, the ALJ found that substantial medical evidence established that headaches and related symptoms were "intermittent and controlled with medication." (Tr. 20) The ALJ found no evidence to support Roten's claim that he suffered from a heart disorder. As for stomach disorder or gastritis, the ALJ found that substantial medical evidence established that "nausea and vomiting have been intermittent and controlled with medication, and never lasted for any continuous

To the extent Plaintiffs contend that the combined effect of alleged impairments was not taken into account in subsequent steps of the disability determination, the record does not support such a claim. As the magistrate judge explained in more depth, "At the third step, the ALJ determined that [Roten] did not have an impairment *or combination of impairments* that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1." (M&R 5) (Tr. 18). Having considered the combination of alleged impairments and whether any combination of impairments might meet or equal the criteria of a listing impairment, the ALJ proceeded to Step Four to consider again all of the alleged impairments – whether he deemed them severe or non-severe – and the impact each might have on the claimant's ability to perform his past work or other work given the claimant's age, education, and prior work experience. In assessing Roten's Residual Functional Capacity (or "RFC"), the ALJ expressly stated, ***"When the combined effect of his "non-severe" and "severe" impairments is considered***, it is determined the residual functional capacity does not need to be reduced below medium." (Tr. 23)(*emphasis added*). The functional limitations upon Roten's ability to perform the full range of medium work included restrictions "to eliminate exposure to heights, moving machinery, extreme heat, driving and dealing with the public." (Tr. 23) While the ALJ expressly mentioned the need to impose certain additional functional limitations given Roten's history of suffering from seizures, it does not necessarily follow that the non-severe impairments were not also part of the ALJ's Step Four (and RFC) analysis. *See*

---

twelve-month period." (Tr. 21) Regarding liver and kidney failure, the ALJ recited "unremarkable" results from a renal ultrasound of Roten's left and right kidneys from March 2007 and found, based on a lack of substantial medical evidence, there were no liver or kidney impairments. (Tr. 21) Next, the ALJ discussed Roten's head injury from 1982 which resulted in encephalomalacia, later diagnosed as static encephalomalacia. The ALJ found that substantial medical evidence indicated that "seizures are controlled when medication is taken as prescribed." (Tr. 21)

20 C.F.R. §§404.929 and 416.1529 ("In making a residual functional capacity assessment, all symptoms including pain have been considered, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and with the other substantial evidence of record."); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005) (determining that the ALJ properly considered combined effect of impairments where he listed the impairments, expressly stated that he considered them individually and in combination, based his RFC on the combination of impairments and found that the impairments, in combination, were not of listing level severity). The ALJ found that Roten was unable to perform most of his past relevant work. (Tr. 24) At Step Five, the ALJ ultimately found Roten capable of performing other light unskilled work subject to additional limitations (office helper, small products packager, table worker). (Tr. 25)

In the Court's view, the ALJ adequately considered each of the alleged non-severe impairments, but found that the objective medical evidence did not support Roten's subjective claim concerning the alleged debilitating effect these conditions collectively had upon him. Accordingly, the Court finds that the ALJ's analysis in this case is consistent with SSR 85-28 and that substantial evidence exists to support the ALJ's findings with respect to the non-severe impairments and the combination of impairments. This objection is overruled.

**B. Credibility**

Plaintiffs specifically object to the ALJ's overall assessment of Roten's credibility concerning his subjective complaints. The issue of credibility was thoroughly addressed in the M&R. (M&R, 9-11) While the ALJ found that Roten had underlying impairments that could cause some level of symptoms, the ALJ found that Roten's "statements about intensity, duration and limiting effects of

these symptoms are not consistent with the record and therefore not entirely credible." (Tr. 23)  The ALJ noted that "[Roten's] activities of daily living are inconsistent with his allegations of disability, *i.e.*, he prepared meals, performed household chores, attended church, visited with neighbors, helped his son with homework, etc." (Tr. 23)  The ALJ later also noted that Roten's "performance of walking, attending church and performing heavy household chores belie his allegations of disability." Id.  In addition to finding that Roten's daily activities were not consistent with the symptoms and limitations described by the claimant, the ALJ cited Roten's "less than exemplary work history" as well as "[e]vidence of symptom exaggeration, evidence of malingering with secondary gain motives, untrue statements to his treating neurologist, lack of initiative in seeking vocation rehabilitation and noncompliance with treatment recommendations ..." as specific grounds for questioning Roten's credibility.  (Tr. 20-23) The ALJ also noted that one of the consulting examiners reported that Roten's "reliability as a historian was "highly questionable."" (Tr. 21-22)  The ALJ provided sufficient factual detail in explaining his determination that Roten's testimony was less than credible. *See* Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994) (*citing* Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1993)).

Plaintiffs first contend it was improper for the ALJ to rely on Roten's ability to perform various daily activities as a basis for the finding that Roten was not disabled. However, daily activities are properly considered. *See* 20 C.F.R. §404.1529(c)(3)(i); SSR 96-7p.

Plaintiffs likewise claim that ALJ Garrison misconstrued certain evidence that Roten, at least for a period of time, was not completely honest with his neurologist.  The ALJ was troubled by this fact, which was admitted to by Roten during the hearing.  (Tr. 19)  Plaintiffs argue that Roten's purpose was honorable as opposed to deceitful.  According to Plaintiffs, Roten did not report the full

extent / occurrence of seizures ***so that he could continue to work*** – not avoid work or undercut the instant claim of disability. Plaintiffs' claim may be, in fact, true. However, it is not the role of this Court to try to ascertain what was in Roten's mind when he elected to provide less than accurate / truthful information. *See* Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (reviewing court should not "make credibility determinations"); *see also* Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hunter, 993 F.2d at 36 (It is well within the discretion of the ALJ to make determinations of a witnesses credibility, and weigh that testimony accordingly.). In any event, Roten's failure to disclose certain information to his neurologist was merely one of many facts the ALJ relied upon in assessing credibility.

The ALJ's determination regarding credibility was based upon ***all*** of the evidence before the Commissioner, including the lack of objective medical evidence to support the nature and degree of functional limitation described by Roten. If properly supported, this Court is not to disturb the ALJ's credibility determination. *See* Moore v. Shalala, 1994 U.S. App. LEXIS 29870 (4th Cir. 1994) (*unpublished*) (stating that reviewing courts should give "great weight to properly supported credibility determinations"). This objection is overruled.

### C. Effect of Subsequent Favorable Decision

Apparently, after the briefing in this matter was complete, the claimant was awarded disability benefits based upon a later disability onset set.[3] The only reference to the subsequent favorable ruling is within the "Conclusion" section of the Plaintiffs' filing containing objections to the M & R. (Pls.' Obj., 7) ("Mr. Roten was subsequently approved for benefits on a claim filed after

---

[3] For purposes of this Court's review, the relevant time period is between August 16, 2004, and June 6, 2007 (date of ALJ Garrison's decision.) (Tr. 25)

the Garrison hearing.")  While not expressly articulated, Plaintiffs' implication is that because the Commissioner subsequently awarded benefits to Roten on a subsequent claim, ALJ Garrison's decision denying benefits on the first claim *must* be overturned as error.  Plaintiffs do not provide the Court with the subsequent favorable decision or otherwise attempt to formulate an argument supported by statute, regulations or case law.[4]  The subsequent favorable decision was never made a part of the instant record and was not made known to the Magistrate Judge while his M & R was pending. (M&R at 2) On this record, the later favorable decision has no effect on the instant substantial evidence review.

## III. ORDER

**IT IS, THEREFORE, ORDERED** that the Commissioner's motion is **GRANTED** and Plaintiffs' motion is **DENIED**.  Accordingly, the Commissioner's denial of benefits is hereby **AFFIRMED**.

Signed: September 30, 2011

Richard L. Voorhees
United States District Judge

---

[4]  The Court takes judicial notice of the Social Security Administration's Hearing, Appeals and Litigation Law Manual ("HALLEX"), but notes that HALLEX Guideline is an internal guidance tool that lacks the force of law. *See* Melvin v. Astrue, 602 F. Supp. 2d 694, 704 (E.D.N.C. 2009) (*citing* Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (SSA Claims Manual "has no legal force," and does not bind the agency); Christensen v. Harris County, 529 U.S. 576, 587 (2000) (holding that agency interpretations contained in "policy statements, agency manuals, and enforcement guidelines[] all ... lack the force of law")).